Also to clarify, how do you pronounce it? Is it Artesanias or Artesanias? It's easy, Jeff. This is Barry Goulden. I pronounce it Artesanias. Think of it as being Artie. Artesanias Hacienda Real, S.A. That's easy. Artesanias. Thanks. Yep. Let's call it A.H.R. Okay, Mr. Goulden, you ready? Yes, I am. As I start, though, I'd like to reserve four minutes for a reply. All right. And it's my hope that since you've requested oral argument that you're going to have questions for us. And I'd like to respond to those and give you as much time as I could. But I did want to begin by reminding you that there are two issues lurking below the surface of what seems to be a standing argument. And I wanted to raise those two issues to you for your collective attention. The first of the two issues is what, for lack of a better, I will call chapter 7, trustee discretion. Under the bankruptcy code. Say that again, please, Judge McKee. Say that again. Judge McKee, it's what I call chapter 7, trustee discretion. Because the chapter trustee stands in the place of the debtor or the management of the debtor or the person operating the debtor and is afforded considerable discretion. And it's subject, that discretion is, of course, subject to the statutory limits. But it's also subject to the objection of creditors and, more importantly, approval of the bankruptcy court. And the reason I raised that first issue I raised was trustee discretion. And it ties to the second issue, which is finality of the bankruptcy court order. It is critical in a bankruptcy court setting, really for any court, but in particular bankruptcy court, that once it makes its decision and ruling and issues its order, it is a final order. And that's important because the bankruptcy court is typically dealing with property. It is important that anyone coming along afterwards knows that the person who's dealing with the property, the bankruptcy court says this is the proper person to deal with the property, can rely on that. We also have issues here of a cause of action, not just the lien on the real estate, but there's also an issue, isn't there, of causes of action? Yes. Yes, but I'm not sure how – would you like to flesh your question out more? Yeah, well, I'm just not sure where you're going with this. I'm not sure how it's helpful. It seems to me the biggest problem, at least in my mind, that you have to overcome is how your claims are unique to – how you find things are unique to your client. Why aren't they the same as the claims of any other creditor of – not the debtor, but the – The answer to that is really very, very simple in several respects. The first respect is my client, unlike any other creditor, and there weren't many other creditors, but my client had a judgment lien. It's a secured creditor. And the issue – all the claims arise from the deprivation of its – being able to enforce this judgment lien. But they're tough to show more than that. The fact that you have a priority under the code because you're a judgment creditor doesn't necessarily, as I understand it, take you out of the universe of creditors. The claim you have, it seems to me, is not unique to your client, but it's the kind of claim that any creditor could assert. Now, you have a secured contract because you have a lien, but that does not make your injury unique to your client, does it? It just goes to what your client has done to enforce that. I respectfully believe it does. Let's keep in mind a provision of the code. Section 541 of the code says that the only property that becomes property of the debtor after the bankruptcy is property that was property before. My client had a judgment lien on the debtor's property before. That judgment lien continued after the bankruptcy was filed. Mr. Golden, judge me this. Let me put Judge McKee's concern a different way. At least this is how I see it. A lien and being secured gives you a different ranking within the creditors. But let's imagine that your client recovered $2 million from these suits, more than enough to complicate your injuries. Isn't it possible that there would be leftover money here that could benefit other creditors? I mean, that's the test we adopted, albeit with a dissent, in Enry Emeril. And if the other creditors could also benefit, I mean, yes, you stand in line first because you're secured, but it doesn't make this claim to the exclusion of your state as a whole benefiting from it. Well, that raises an interesting problem. Because in this particular case, Liza Whittler, which is the attorney, was the attorney for the debtor and for Mr. Jeffrey, had sent letters to the creditors saying there isn't any other property available. There's no other way you're going to get money. Okay, you may have said that, but you're asking us to adopt a rule, and the rule we apply has to apply not only when it's Wilk-Normital is the one big – sorry, Artesanius is the one big creditor, but in cases where there are dozens or hundreds of creditors. And if we adopt your sense that it doesn't matter, if we blur the sense of what makes it general versus personal, where we felt that we take the dissent position in Emeril, then that's going to affect a whole bunch of future creditors too. Five minutes. And my position would be that the fact that there is a priority security interest makes it different. I'd just like to chime in on that. Why can't we say that if this is, in effect, a fraud on the bankruptcy court, that not only do you have a right, but also all the other creditors also have a right, they've been injured. It's just that your injury is – you're in the disposition of assets, but you have a priority claim. But all the creditors, including general unsecured creditors, were either injured by what occurred. Okay. And I don't just have a priority claim on those assets. Okay, but that brings us to the second problem, which is that in this particular case, there was a compromise, a Rule 9019 compromise with the trustee. It gets back to the issue of the trustee discretion. And the trustee in this case decided that the trustee did not want to pursue those claims, which takes us out of the other kind of Emeril kind of cases. If the trustee doesn't want to pursue the claims, and the secured creditor does, and notice is given to all creditors and no one objects, and the bankruptcy court then issues its final order saying that you can proceed, why doesn't that comply with every purpose of intent of the bankruptcy code? Well, but they're still pursuing Lisa with Heller. So the trustee has not given up. The trustee is pursuing only the malpractice claims, and rather interestingly, because this happened after the briefing, the trustee has sought to abandon the claims to the debtor, which would theoretically be absolutely permitted under Section 548 of the code. What's the best part of the record that supports your abandonment argument? Can you cite me something in the joint appendix that we can look at? Sure. I'm pulling out my pages of the appendix now. If you look at the chapter trustee's motion to abandon, that was in the appendix at 8466. And then there's the stipulation for abandonment that was so ordered by the court. Two minutes. At 8468. And the only things that weren't abandoned with that were the malpractice claims. The malpractice claims that the trustee now wants to abandon to the debtor, and the objection based on Judge Smith's decision is that they can't even abandon to the debtor. But it doesn't unequivocally give that authority to Artesanius. Where in here does it unequivocally give it to Artesanius? It says it defines the claims, and it says that the motion was the original motion entitled motion to abandon. Well, didn't the stipulation in settlement agreement say something to the effect that the trustee would not interfere with the assertion or pursuit of Artesanius or the debtor of any of the abandoned claims? Yes. Let's not confuse the two different agreements. The first was the compromise agreement, and that was the settlement agreement beginning at page 8239. Okay. And the last page of it, or the next page, is 8246, and I believe you're referring to the last sentence of Section 17. Yes, that's right. Now, if you remember, there was dialogue in front of her colleague, in front of Judge Saway, as to this very provision. And it was during that dialogue that I specifically asked, we're not foreclosed from pursuing the district court case that we have. All right. So that might either be abandonment or a stop all because North Mill's lawyer was there. Correct. How does that operate against Leibowitz? Well, it did in the sense that he was abandoning all claims. Well, this compromise in Section 17, you notice it specifically mentions Leibowitz-Heller. It says, which any charge may have against North Mill, Leibowitz-Heller, Ivan Jeffrey, and so on. But the trustee is still pursuing claims against Leibowitz-Heller. You say it's only a practice in breach of contract. Correct. But, you know, the trustee, what would you say about the idea that the trustee has discretion about which legal theories to pursue against Leibowitz-Heller and which not? Are you saying every time the trustee chooses to pursue some legal theories, Artisanius, it's abandoned everything else to Artisanius to pursue? Yes, that's what the trustee chooses to do. And what he chose to do was to abandon those claims that were already being pursued by Artisanius. Remember, he had received, Artisanius had filed his complaint against Leibowitz-Heller and North Mill months before the bankruptcy filing. The complaint and then the amended complaint had been provided to the trustee, and the trustee simply said, I don't want to pursue them. Those are the claims I'm interested in. And he allowed Artisanius to pursue them. And that was the subject of the colloquy in front of the bankruptcy court. No one objected to Artisanius pursuing. That was part of the compromise agreement. And we're getting to part of that, which is why I raised the issue of trustee discretion. Here, the trustee has exercised his discretion. He doesn't want to pursue the claims. He announces that. This is a compromise hearing. Notice has been given to everybody. The bankruptcy court says, okay, fine, you can go ahead and pursue the claims. A final order is issued. And then after the fact, after we've been induced to enter into this compromise agreement, after the fact, months later, there will be an argument made, well, no, no, no, the trustee couldn't do that. But we already have a final order by then. Which part of my concern is if this isn't a final order, then any property can be as someone can come back later and say, well, you know, it doesn't matter whether it's a final order or not. Your position is that you have the right to pursue your cause of action in defense of court, and any other collector who would also have a likewise would have a cause of action. Would they not? No, because they didn't enter into the compromise agreement with the trustee. And they didn't have, with respect to Liza with Heller, they didn't have an abandonment order. Again, that gets back to the issue of the compromise and the abandonment that's made by the trustee. It's very specific. And it's true in both cases. It's ordered by the court. Nobody else has those, nor could anyone get them. So really it gets back to the point I made before. It is about the trustee's discretion in what he can do to make a compromise, what he can do to abandon, and then the consequence of statements made in the court on the record and the court's final order. And what we're seeing here is an attempt to open up that final order. Is it different proceeding? Now, I don't know whether I've answered your question or not. I hope I have. You mentioned mine. This is just a mistake. Is the issue here an abuse of discretion on the part of the trustee, an error of law on the part of the trustee? I don't think the trustee made any error. The trustee has the ability to compromise, and the trustee has the ability to abandon. I think the issue is in terms of the subsequent proceedings in court. Unfortunately, Judge Felling had retired. No, he recused himself and then retired. I don't think we would have had the same result if he had been still on the bench because he would have gone back and said, I already said this. Why could not we just appeal the decision of the trustee in bankruptcy and say it's inequitable, you have a lien, and you walked away with practically nothing, and you would have been a priority if it had not gone according to the way it usually goes? I'm sorry. I lost the first part of your question. What's your proper proceeding? Why wouldn't it have been to appeal the trustee's decision when he entered into this agreement and say, no, it's improper because you had a priority lien, and you've been dealt away with your priority lien by this agreement? This was a compromise agreement we entered into. This is an agreement between our dissenters and the trustee. We were willing to do that so that one piece of valuable real estate could be sold. There was a bidder. And it was a good bid. So we entered into an agreement with the trustee to permit him to sell. But part of the compromise, in order to get that agreement with the trustee, was that he would be permitted to pursue these claims that had already been filed and were in the district court. That's why it's a rule of law. What happened to the Edgar was closed? You say it was closed when the trustee proceeded with the closing. What happened after that? After the real estate, approximately a month later, after the compromise agreement was approved by the bankruptcy court, the real estate was sold. The proceeds were later distributed. And with the approval of the trustee, we continued to pursue our claims in district court, which is exactly what was contemplated prior to. It was exactly as contemplated in the compromise agreement, called the settlement agreement. It was exactly as contemplated in the bankruptcy court proceeding. It was exactly as contemplated by the bankruptcy court order. It was just the way it was supposed to be. That was what we had agreed to. You have no more real estate upon which to assert a priority claim. Real estate has been sold. Are you clear of your claim, I take it? That was part of the compromise agreement, yes. We gave up the lien so that the real estate could be sold. Well, then why did you give up the lien? If you didn't give up the lien, you would have had the proceeds from the sale would have satisfied the lien. Because North Mill and Artesanias were both claiming liens, which would have – because of the conflict between North Mill and Artesanias as to their liens, the property couldn't be sold unless we both agreed to a compromise agreement, which is what happened. In effect now is that you agreed on the condition that you'd be allowed to proceed your court of action into district court. Absolutely. You have it. Well, why can't we say that – in other words, there was no fraud on the district – on the bankruptcy court here. You agreed to proceeding. The only question is – well, you say there is no question that it was agreed that you would proceed with your district court lawsuit after the money was sold, the real estate was sold. Although, how were you going to realize any benefit from that sale? The money had been disbursed, I take it, at that point. Part of the money was disbursed to North Mill. Part of the money was disbursed to Artesanias. Part of the money was disbursed to the trustee to pay his costs, and part of it was paid to the trustee for his fee. Well, you only got peanuts out of that. You didn't get what you could have gotten for the – you didn't get the entire amount of your judgment claim. That's part of what we gave up in the compromise in order to be able to continue pursuing the claim against North Mill and Leland Wood Teller. So, yes, you're correct. There was – you see, the issue between North Mill and Artesanias was an issue of priority and amount. Yeah, yeah. And if we could have litigated that for years, but someone would have had to take care of the property which was vacant. Someone would have had to pay the – What kind of property was this? It was an office building, actually a beautiful office building, that had been essentially abandoned. There was no one in it. The real estate taxes weren't being paid. The utilities weren't being paid. And then there was a critical, critical problem. This was a beautiful wood building. The fire preventive devices weren't working. The fire code people were in harms and insurance was about to be canceled. We had to deal with it very quickly. Is that a – Your base agreement is by reason of a settlement agreement you had that they agreed that you would be allowed to proceed with your claim to the proceeds, and that's why you agreed to the sale. And the two, Heller and the other party, would be liable for anything that the district court comes up with. Correct. And the urgency for the sale, I hadn't seen that before. Looking at this, the agreed value of the property was tied to the extent to which the sale could be accelerated? The value of the property had been almost $900,000. The property was in deteriorating condition, and we had a buyer that was willing to pay $800,000 for it. And as I indicated, the real estate liens, the real estate taxes weren't being paid, and the Biltmore Armadale was out of business. There was no money to pay. I personally had to arrange for the grass to be cut, and I was personally having to go out there to take care of things. But we were faced with the fact that the insurance was about to cancel and a township was coming over us because the fire prevention wasn't working. Well, why didn't you provide in the agreement that upon the sale of the real estate, the money would be paid into the bankruptcy court held by the trustee until you and the other parties had determined and those entitled to what part of it? That was the alternate that we had discussed, and it was not something the trustee was interested in. The trustee wanted it all simple, clean, done. We had to have some kind of an arrangement between us and between North Mill so this property could be sold. All right. That's an issue of trustee discretion. So now you want North Mill and Heller to pay back what you think, after litigation, that you would be entitled to more than you received. Correct. Well, to make good the loss. All right. And the specific part of the trustee's agreement that allowed you to do that, all the parties agreed that you say, your position that you were allowed to go ahead with your lawsuit is what? It was the clause 17 of the Compromise, that's item one. Item two, the colloquy on the record, because I would not have proceeded but for that colloquy on the record, in which North Mill said, yes, you can go ahead with a district court. North Mill was at the colloquy. Elizabeth Heller was not represented at the colloquy. Correct. But they had had the opportunity to be present, and they're specifically mentioned in the clause in section 17. The rule in the bankruptcy court is, you know, you show up and if you have a problem, you object. If you don't, you waive your objection. And then the bankruptcy court approved. Now, with respect to Elizabeth Heller, to make it clear later, we have the subsequent abandonment agreement that I pointed out to you. In 8466 and 8468 and continuing. So we have both the Compromise with respect to them and also a specific abandonment agreement. But it's abandoned, but it doesn't say whether it's abandoned to Wilton or to Artisanius. It just says we abandoned them. Yes, and abandonment by law is to the pre-petition possessor. It gets back to the cryogenics case that we mentioned in response to your letter. Cryogenics in the Third Circuit. The court said, look, the creditor claim is a creditor claim. It doesn't become property of the estate. It's merely that the trustee has the power to deal with it. And when it's abandoned, it reverts back to the pre-petition possessor. So in cryogenics, they said the trustee couldn't sell the claim to anyone else, the creditor's claim to anyone else, because it belonged to the creditor. The claim, I mean, it sounds like it's just another way of saying what we were talking about earlier, whether the claim is fundamentally just Artisanius' claim, or is it that Northdale or Michael Teller were plundering the debtor as a whole? And if the latter is the case, then it's not clear to me that it's under that logic that it goes back to one of the people who was injured, because it seems like the wrong is really a wrong of plundering Wilton. But an abandonment under 548, the trustee has the power or has the discretion to abandon any property if he no longer believes it to be beneficial to the estate. Right, but that doesn't answer the question, abandoned to whom? It abandons to the pre-petitioned possessor. But again, that goes back to the same question. Whose claim is it? It's just another way of getting at what logically is just a different flavor of this. Is this really an individual personal claim, or is it a general claim? With all due respect, a fraudulent transfer claim, for instance, belongs to the creditor. Only a creditor can assert it, and it's that creditor's claim. Assume for a minute that there wasn't a bankruptcy. Let's assume that there had never been a bankruptcy, and Artisenius was realistically the only major creditor of Wilton the debtor. Artisenius then could have pursued its fraudulent transfer claim as its creditor, as a creditor. He doesn't have to call up all the other creditors and say, you know, hey, guys, are you in with me? It's his claim under statute. But isn't it true that the fact that it's fraudulent transfer reduces the value of the bankruptcy state? It reduces that which is available for any creditor to collect from. So why is it then a loss unique to your client? At that point, it's a decision simply by the bankruptcy trustee that he doesn't wish to pursue the claim, and he makes a motion in the bankruptcy court under Section 548, and creditors are given notice, nobody objects, and the bankruptcy court issues an order, which is now a final order. So what I'm in a loss to understand at this point with a final order is why would we even be discussing that? That decision is passed. It's over the hill. It's done. And it gets back to the issue of once the property is abandoned by final order, the person to whom it's abandoned has to be able to pursue it. Otherwise, abandoned property could be subject to question forever. So we get back to the comment I began with. We have the two issues of trustee discretion and final order. If these orders aren't final orders, what is, and what are you going to do with the consequences? I think the trustee could have pursued this claim himself, but your position is he did, and therefore it was abandoned, and therefore it's yours to go forward with. Correct. That kind of has to be. That's clear reading of the code on the one hand, but it's also the intent of bankruptcy, which is to turn assets into usable value if you can. If the trustee makes a decision that the trustee doesn't want to pursue it and decides to abandon it because he's not interested in abandoning it, but because someone else is, namely the creditor who had the claim to begin with, that's the purpose of the bankruptcy code, to allow these assets to be turned into value somehow, or at least the possibility of value, and to achieve a final decision so that it can be done. Well, you know, in cybernetics, we concluded that the fraudulent transfer claims were abandoned to the individual creditors, like our kids did. When we pointed out in the cybernetics ruling that such claims really belong to all the creditors, not just you. Not once they're abandoned. Once they're abandoned, they go back to who? If your question is, could the trustee have abandoned a claim to someone else if they asked for it? Of course. But nobody else did. Nobody else was interested. To be very blunt, nobody else had enough. The claims were very minor. Nobody cared. So, okay, so you're saying as a matter of law that this was agreed to by all the parties, including the trustee, and, in effect, what's all the shooting about? Yes. You got it. And not only is what all the shooting about, but it's what are the consequences if a final order isn't a final order? That answers my question that I started with, in terms of why is this not a general claim of the state. I think you responded to that in the dialogue. Okay. If there are no other questions, then. I have none. Nope. That's it. Okay. Are my four minutes still reserved? No, the fact that we go over your time, you reserved for your daughter. That's your daughter. We didn't forfeit that. Good. Thank you. Thank you. As a result, we will let Mr. Foster and Mr. McCarran have a bit more time if they really need it. Mr. Foster, are you going to address that, I think? Yes, Your Honor. I'm ready to proceed. Okay. Tell me why Mr. Goldman is wrong about this. Certainly, Your Honor. So may it please the Court, my name is Tim Foster from the firm on behalf of the appellee North Mill Capital, LLC. Your Honor, as found by both the bankruptcy court and the district court below, Artesanias Casienda Real F.A.D.C.V., which I call A.H.R., has no standing that would enable it to bring the claims it asserts against North Mill and Lyco Appellary in this action. A.H.R. as a judgment credit, I'm sorry, was that a question? No, please, finish your introduction. As a judgment creditor of the debtor, A.H.R. has no recourse to North Mill or Lyco Appellary for the harm alleged, which as is presented in the amended complaint, would have impacted only the debtor, Wilson, directly. A.H.R. claims stem from a purported scheme between North Mill, Lyco, and Wilson's principal, Ivan Jeffrey, the alleged end result of which was the sale of Wilson's assets at a below market price, thereby reducing the overall value of Wilson. The only injury alleged by A.H.R. is that the purported sale of Wilson's assets now make it more difficult for A.H.R. to recover full value on its judgment claim against Wilson. A.H.R. doesn't allege any privity or preexisting relationship with North Mill or Lyco, and because the only entity that could have been harmed from the and because any harm ultimately befalling A.H.R. as a result of that alleged conduct would impact all the other creditors of Wilson equally, A.H.R. lacks the requisite constitutional standing to bring these claims. Okay. Sorry, Mr. Foster, Judge Bevis here. You just said constitutional standing, but your argument doesn't support it, especially post Lexmark. Earlier you were talking about privity or relationship. Now, that might be right. That might be a limitation of bankruptcy code. This sounds like it's really hard to figure out whether was the injury inflicted on the creditors as a whole, such as the estate in particular. But when you say constitutional standing, the requirements for constitutional standing at jurisdiction are very minimal. I mean, a single person who says, I occasionally go to a national park to watch birds is enough. You know, the indirect harm that's going to play to that person for not being able to go visit Yosemite next year is enough. So I don't think you could say that because Wilson has a claim, therefore Artisanius doesn't have a claim, but that's a constitutional minimum. I mean, lots of different people get claims constitutionally. So post Lexmark, isn't that, isn't that just the wrong way to look at it as a constitutional jurisdictional requirement? Your Honor, as you point out, there are three requirements for a constitutional standing. The plaintiff must show, and it is the plaintiff's burden to show, an injury in fact, a sufficient causal connection between the injury and the conduct complained of. I think that the injury will be addressed by a favorable decision. And while those assets have been held at minimal, it's not as if any person going to court for any reason can meet those requirements. I don't think I'll be hearing you. I don't know what happened to your phone connection. It's a bit broken up. I'm sorry. This is much better. Yeah. Okay. So the requirements may be characterized by some decisions as minimal in nature, but they do exist for a reason. It's not as though any person for any reason can go to court. I'm not aware of any case that says the constitution requires privity or a contractual relationship. On the contrary, lots of non-contractual relationships with no ripple effects allow indirect as well as direct victims to sue. As long as it's injury in fact, causation, and reversibility. And the causation can be a step or two removed if it's sufficiently concrete. So what you said earlier is in tension with the argument you're making now, I think that this is really constitutionally required. I see where the potential misunderstanding happened here, Your Honor. By raising the issues of privity or a pre-existing relationship, I wasn't meaning to make that any sort of basis for my argument. What I'm doing is just narrowing down the issue to foreclose any issue that there's a pre-existing contractual or other relationship between the parties here. The only real issue here is whether or not Artesanias has the requisite standing to pursue these claims. And our argument is that they lack the injury in fact required to constitutionally bring these claims. This has been interpreted by courts, including the Third Circuit, several times. In some cases that you said, doesn't Lexmark clarify this? Well, Your Honor, the way we read Lexmark is a clarification. They're not saying that what has been historically termed as prudential standing no longer exists or isn't a valid analysis when you're talking about constitutional standing. What Lexmark really did in our reading is to narrow things down and focus everything back to the original three constitutional standing requirements, but to put those through a filter and say there may be certain times where the historically characterized analysis of prudential standing is looked at through the same lens. So when we're dealing with the issue of third-party claims, for instance, those third-party claims don't exist under most circumstances because the third-party claimant, you know, somebody can't raise the claims of another party because the claimant in that case would lack the injury in fact or the sufficient causal connection or the likelihood of regressibility that are Counsel, this is Judge Cowan. Let me just ask you a question, getting away from the standing argument. You've got to agree, don't you, at the very least, that the settlement in Carvine Agreement did not waive or settle any claims that Artesian otherwise had a right to bring. You've got to agree to that. Is that correct? I agree with you completely, Your Honor. Nothing in the settlement agreement bankruptcy court. All right. So they did not waive or settle any claims of Artesian. Okay. Given that fact then, don't you agree that what was said to give the parties or the bankruptcy regard to accept the settlement in Carvine, does that preclude you from contesting Artesian's right to bring its claim? And if they bring the claim and you say it's not a bona fide claim, you can make a 1236 motion or whatever, but you acknowledge at the settlement in the bankruptcy court that they have a right to bring its claim. Your Honor, the settlement in the bankruptcy court didn't waive or resolve anybody's claim for defenses or arguments in the federal court at all. If you look at the very integration clause that Mr. Golden cited when he was arguing, this is paragraph number 17 of the settlement agreement on page A246 of the appendix. It specifically says that this agreement is not intended to, and does not release, waive, restrict, limit, or otherwise prejudice any rights, claims, or interests, which AHR may have against North Mill, Leif DeWitt Heller, Ivan Jeffrey, et cetera. What this did was just preserve any rights that already existed or inured to AHR from the beginning. It did not create any new rights. It didn't waive them. And we're not arguing that AHR's claims in this action are foreclosed in any way by this bankruptcy settlement agreement. We've never argued that. And the lower courts didn't rely on that argument either. Well, those are the stop all, those are the stop all tip against you when you consider what happened in the settlement process together with what you're saying and what you were saying in the mandate is proceeding. But you know, they could go forward with this thing. I don't believe that anybody said that in a way that, that waived any rights to honor to the extent that what was said during the bankruptcy colloquy was that AHR could continue with its claims in the federal court. All that meant was that nothing that was happening in the bankruptcy court, and Judge Phelan actually clarified this. He said specifically that nothing that was happening that day in the bankruptcy court affected the federal court case in any way. And we agree with that. We've never relied on what happened in the bankruptcy court when we're dealing with whether or not AHR has standing to bring these claims in federal court. We looked at it as a completely separate inquiry. It's an independent action. It's an independent judgment, but nothing that happened in the bankruptcy foreclosed AHR from bringing these claims in federal court. And we're not arguing that, but conversely nothing that happened in the bankruptcy court waived or defending themselves or objecting or bringing any meritorious arguments that they had against the claims that were being proffered by AHR in federal court. And your position that they don't have standing to sue you or is based on what? And so I'm about to get for me. It's pretty diverted. All right. But certainly you're on it. So the issue is that AHR lacks standing because the, the injury that they are complaining of, which was the reduction in value of assets of Wilton was felt only by Wilton. It doesn't belong. It wasn't felt by or to AHR directly. I want to build on that because your friend, Mr. Golden just said, well what about fraudulent transfer claims? Your argument then would seem to be that no creditor could bring fraudulent transfer claims. Well, certainly not once, certainly not once the debtor goes into bankruptcy, your honor the, those claims belong to and can only be asserted by the estate or its trustees. The, the law is very clear on that. But his argument is these belong to the creditor beforehand. If there's an abandonment, they go back to that creditor and get your logical team to suggest, nope, nothing, nothing. They're all good. Because the trustee, the estate or the trustee is the proper party to bring those. And if the trustee determines that for whatever reason, those claims aren't meritorious or shouldn't be brought, that's within the trustee's power and discretion to determine what happens to the claim. That's the problem. Once the trustee abandons claim for whatever reason, where does it go? Does it just disappear? No one has it. I beg your pardon. Go ahead. Answer a judge, a judge's question. I'm sorry. I didn't mean to interrupt. Certainly your honor. So even if the, the claim had been abandoned to a HR in this case, in other words, even if the trustee's intent was to somehow assign or allow a HR, the right to, you know, assert these claims as a matter of assignment or whether or not it's an, an asset or property of the estate that still doesn't convey standing. The trustee doesn't have the authority to convey standing to sue. What's your authority for that assertion? The trustee can convey a piece of property. And if a person gets a black acre, no question. You can get that. So why is this not a chosen action that the trustee can assign just like black acres? Again, your honor, it goes back to the constitutional standing, a part that the courts can only hear a case where there's an active case or controversy. And in order to do that, the plaintiff must show it's the plaintiff's burden to establish that it has standing to bring the claim. And where that standing doesn't exist, no assignment of the claim can create it out of full cloth. Okay. I'm just going to get a counsel. Is your argument, what gets me back to the research I did years ago, dealing back with this, in which years ago, no one could sue anyone unless you had, they called it privity of contract. It went out. There had to be only between two contracting parties. And then judge Boggess just alluded to a few minutes ago, that I would do away with all these concepts of where somebody is deported and was not party to the fraud, could not sue because of conveyances and other areas. And you have the same thing here. Even though he's not a party to it, that doesn't mean he wasn't affected by it. And if so, if he was affected and legal rights were, were diminished, why wouldn't he have standing? It doesn't have to be the, I'll go back to privity of contract between the two parties. So let's go back to the old copy out after. Well, your honor, I think that the courts have tried to wrestle with this issue for decades. And what, what it always comes back to is the injury in fact analysis, the party who was harmed in the first instance directly by the complaint of conduct is the proper party to bring the claim. That's the only part. Why is that? That's an amendment by the trustee. Why isn't that party HR? Because your honor, the claim that the damage complained of, if it exists at all, would be felt equally by all of the creditors. That's injured. It's not that none are injured. It's that they're all injured and all have injury. In fact, there may be a bankruptcy specific reason why the trustee statutorily or narrowly exercises that, but after they've abandoned it constitutionally, they've all suffered. Yeah. The fact that all people have standing doesn't mean that any one of that universe doesn't have standing. It doesn't mean that others may have it also. Your logic would seem to be if you injure enough people, you can't feel on it.  Yeah. Everybody you're, you're free. You know, no, your honor, but it's only the, the individual party who is injured directly by the complaint of conduct that has the standing to see. So for instance in this case, the, all of the, if all of the creditors of Wilton were allowed to sue in an individual capacity, again, I'll go back to the issue that this is not a derivative action in, in the case law, when creditors are allowed to bring this kind of claim, by virtue of damage that has, has allegedly been done to the debtor. They can only do it as a derivative claim. They bring it on behalf of the estate for the benefit of all of the creditors. That's not what the HR is trying to do here. And the reason. Because the trustee abandoned the claim, we can't do it here. Mr. Foster. I think this is a very helpful discussion with just be this because the gap between your constitutional position and the statutory understanding of bankruptcy, I'll put standing in quotation marks is that your position seems to be no one else can ever sue except the bankruptcy trustee. And if we accept the constitutional position, yes, but then you're saying a whole lot of people who've been injured. Nevertheless, don't count as injury in fact, because they're not direct and they don't have privity, which I'm just not aware of a case that's on all fours. Maybe you can cite me one, but the other position would seem to say, yes, in the first instance, the statutory bankruptcy code assigns that power to the trustee. But then logically, if this is not a constitutional problem that the bankruptcy trustee can abandon it, can release it, can transfer it just like you can transfer an IOU or a bond or a chosen action. So I'd like to know, do you have any authority for this proposition that the, the indirectly harmed people, black constitutional injury in fact, what case? Well, your honor. So in Ray Emerald, I think is at least instructive on this point. It doesn't speak to it exactly directly, but I think the reason that the case law has developed in the way it has is to prevent multiple parties from doing the same defendant on the same issue. So for instance,  if HR is correct and it's, it's claims are allowed to go forward, then that subject North Mellon, like to a teller to the same claims being made from all of the estate creditors. And if the estate had determined that it had claims against them, in fact, it did because it's pursuing claims against life to a teller. And it had, it had asserted claims against North mill, which were resolved in the settlement agreement that was reached in the bankruptcy court. That would subject North mill and life to it or any other party in their similar position in any other bankruptcy to basically unlimited liability for any argument by a creditor of the debtor, that the actions of those parties in any way diminished the value of the estate. It would subject them to, to not only unlimited and multiple liabilities, but it would also put those creditors in direct competition with the trustee for the same recovery. If the trustee determines in their discretion that the claims are not meritorious or what's pursuing for some reason, then that's within the trustees purview. The trustee is a representative of the debtor and also has fiduciary duties to do the best job it can, to recover assets for the estate for the benefit of the creditors. It acts on behalf of the estate. And if it determines that the claims aren't meritorious, then to some extent, I think the case law suggests that the creditors have to live with the trustees decision in many respects. Yeah, there was a stipulation and settlement agreement here in which the trustee indicated that you would not, you would not interfere with our agency in the suit that, that suit against you or, or Miller. The language of that document is similar to the language I pointed out earlier in the settlement agreement. All it did was say that any claims that age are may already have, the trustee isn't going to interfere with. It didn't say, I hereby give a claim that it never had before or new standing that didn't exist for previously. It just says that the trustee isn't going to foreclose any meritorious claims that age are may already have. It's very similar to the language and effects of the first settlement agreement between the parties and bankruptcy court. It didn't foreclose or waive anything. It just said the party can continue with whatever claims, you know, already exist to the extent they exist. They didn't create anything new and it didn't foreclose or preclude anything that was already. Well, it said that the trustee would not interfere with the assertion or procedure or the debtors or any other abandoned claims. So, I don't know. It sounds like that's a good argument, maybe to be made at the district court. It doesn't make much. Oh, correct. And the district court, the district court judge addressed it pretty squarely. And saying that whatever the trustee says, you know, cannot be, cannot create new rights as a matter of law. If the trustee is wrong about its interpretation of the law or the nature of the claims or the operations of the courts, that's not entitled, you know, that that's not a presidential decision. It's not entitled to deference or any, any weight necessarily. And it certainly can't create new legal rights where none existed before. I mean, I can't hear where the trustee abandoned the claim. And at the same time, said he would not interfere with the assertion of our TGS claim. I mean, how much, how much clearer do you have to have the writing on the wall? But again, Ross did not have standing to bring the claims in the first place. Then those claims didn't validly exist, regardless of whether or not the trustee decided that he wanted to Yeah. Why do you think the trustee brought these claims in the first place? Instead of, instead of abandoning it to our, our TGS, why couldn't the trustee have brought these claims? Well, the trustee could have brought these claims, your honor. And if, if the trustee had brought these claims on behalf of the debtor, then we would be having a different discussion right now. In fact, the trustee did pursue these claims against North mill, and they were resolved as to the debtor in the, in the settlement agreement. So no, no. All right. So, so, but, but he had this claim, the trustee, as you say, could have pursued it. He didn't, he abandoned it at the same time, said he would not interfere with our TGS pursuit of the claim. I mean, I, I don't know how much we have to spell out. Mr. Mr. Foster, I'd like to hear you follow up. You know, your, your main line of argument is there's no claim here in the first place. There's no constitutional standing. And by the way, the trustee can't abandon anything to anyone who didn't have it to begin with. But I do think you kind of implied that, well, a creditor would have had a fraudulent transfer claim before the bankruptcy, but then once there is a bankruptcy, it's the trustee, trustee's claims. I'd like to know why is it that if the creditor could have brought this before bankruptcy, that he can't abandon it back. And the other point I'd like to know about is I've heard you say nothing that precludes the application of a stopple. If there is a claim, your client, your responses have been entirely that there is no claim. But judge Cowan asked you about a stopple. I didn't hear you argue anything that would prevent an estoppel. If there is a claim that could be brought. So I'll address your, your second part of that question first, your honor. So as far as estoppel or waiver goes, again, this goes back in part to the language of the settlement agreement that Mr. Golden alluded to, which only says that it doesn't waive or foreclose any claims that artists sending us may have. I think it's more. I feel a tell. There's nothing else in the record that points to any concept of waiver or estoppel. There's nothing. At joint appendix 234 to 236. What is that? The 90, 19 conference where your counsel will go on. Yes, absolutely. They're free. They're free to pursue. They can go forward with what they've got in federal court by all means. So it's unaffected by the settlement agreement. It's just, you're relying on there not being a claim in the first place. Well, and your honor, to some extent, yes. I mean, we are, we are not relying on anything that happened in the bankruptcy court as any assertion that it foreclosed any claims that HR may have already had. If HR had claims or standing to begin with, then nothing that happened in the bankruptcy court foreclosed HR from bringing those claims. We've never argued that. We've never argued that, that HR waived anything by virtue of the, the proceedings in the bankruptcy court. The, the statements that were made on in the colloquy before the bankruptcy court were consistent with the interpretation of the, the language of the settlement agreement. Wait a second. But the problem I have is you've taken the position earlier that the bankruptcy court foreclosed any claims that HR may have already had. And now you're saying, Oh, you thought you could bring this claim, but actually by abandoning it, it just got extinguished. To talk for you. You were too foolish to see this. So that condition you took earlier sounds inconsistent with the idea that, Oh, absolutely. They're, they're free to go ahead with whatever there is. You know, you're now arguing that the abandoned announced an extinguishment, which you, I've looked like that's what you said at the world. Why did you bring hearing? Well, you want to add one quick point about the 99 hearing is that when the carve out was being discussed, we specifically said that nothing. So if you look on page a two, three five payment by Mr. Israel was that there was nothing that would affect nothing going on in the bankruptcy court that would affect what was going on in the federal court. Starting at line seven, Mr. Israel said they could go forward with, you know, we don't see a long tail to that, but they could go forward with what they've got in federal court by all means. What that meant was exactly what paragraph 17 of the settlement agreement says, where they can go forward with whatever claims they may have in federal court. But his statement that we don't see a long tail to that specifically alluded to the idea that we planned to bring a motion to dismiss those claims because we didn't think they had any merit. Okay. But Mr. Goldman 19 and 20 says it isn't compromised by the North mill carve out agreement. Well, by anything that happens, they find. So that would seem to suggest that the settlement agreement doesn't doesn't extinguish the claims against North mill. And again, your honor that's correct. We've never argued that the settlement agreement extinguished any claims. HR may have already had against North. No, our, our, our argument is independent of the settlement agreement. We've never relied on the settlement agreement for anything. And neither did the lower courts, neither the bankruptcy court, nor the district court relied on any, anything that happened in the bankruptcy court or any of the language in the settlement agreement as part of their reasoning in determining the HR last standing to pursue these claims against North mill. And Michael was telling going to the, the first part of your question earlier, let me just clarify quickly my position as far as the abandonment issue, the, the position is not that the trustee can never abandon a claim to anybody for any reason. The position is merely that the trustee cannot assign or abandon a claim to a person who lacks the requisite standing to bring it. If I'm in an automobile accident, that's somebody else's fault. I can't say, you know, sign a document that assigns the right to bring those claims to my uncle who lives in Arizona, who had nothing to do and wasn't even present for the, for the accident. He can't bring those claims as a plaintiff for his own individual recovery. He, there may be limited circumstances where he would be authorized to bring that on my behalf. If I were disabled in some way, you know, and had signed a power of attorney or something like that, but there's, there's no circumstance where he would be allowed to bring those claims as a plaintiff directly against the, the other driver who injured me because he lacks the constitutional standing to do so. And that's exactly the kind of argument we're dealing with here. Artisanias was not directly injured by any of the conduct it's complaining of between North mill, life, the West and Ivan Jekyll. It was Wilton that was harmed by that. And because that conduct, if it hurt anybody at all, would have hurt Wilson and all of his creditors equally. Then HR doesn't have the individualized particularized concrete injuries. That's required to convey constitutional standing to it. Okay. Any other questions at all? I did not hear from your colleague. I'm here, Jeffrey McCarran on behalf of the two lawyers, Eden Booker and Charles Phillips. Your honors have been patiently listening and we're scribbling at the same time. And I hope to put the thinking on the correct track with respect to these slides, it would tell her and it's two lawyers. Let's just remember that the action was commenced by a HR at a point in time that was prior to the bankruptcy. But once the bankruptcy was filed, whatever standing or claim to standing the HR had was completely lost. Unless as, as it would have been discussed, there was particularized harm. I mean, that's the standard to allow a creditor to pursue a claim outside of the bankruptcy. That doesn't on the basis that it doesn't belong to the trustee. Importantly, that test is particularized harm and it relates to the nature of the incentive of the relief. It doesn't, it's not particularized claim. So whatever HR had was lost once the bankruptcy was filed. And I don't, from what I can tell from listening for over an hour now, the court is well acquainted with the idea about particularized harm and accepts the idea that the harm was not unique to HR because it's not subject to a formula. It doesn't depend on priority or the outcome of a math problem about whether assets would have been left for other creditors. So HR had no standing once the bankruptcy was filed in the absence of, and I think that the plaintiff depends on this, the absence of some manner in which it obtained standing and obviously not because it has particularized harm. The first amendment complaint, which is the basis for this action does not describe any basis for standing once the bankruptcy was filed. So all that we're talking about has to do with activity that occurred after this action got underway. And it's not information that was in front of the court. Now I understand that plaintiff is dependent on a stipulation, a stipulation that the court realizes Elizabeth Teller had nothing whatsoever to do with. But importantly, let's look at the stipulation. The stipulation says, where are you in the CA4? I don't have the, 468 I think. Okay. The stipulation says the claims are defined in L11 USC section 1015, which the Wilton trustee abandons. And then it goes on and says to the debtor, to the debtor, there's nothing in the stipulation that abandons anything, anything whatsoever to AHR. This stipulation is limited to abandoning claims to the debtor. AHR is not the debtor. It then goes on and does not abandon any claim whatsoever, any claim at all against Liz, Liza with Teller or the two lawyers. In fact, it says that it is not abandoning the negligence slash breach of, I'm sorry, negligence slash professional liability and breach of contract claims. And what I understand that AHR is containing is that there's, the absence of mention about any other claim means that the trustee meant to abandon any other claim against Liza with Teller. I don't see it. It's not possible for the court to reach that conclusion. The district court. The stipulation and settlement agreement expressly stated that the trustee would interfere with the associate or pursuit by Artesian or the debtor of any of the abandoned claims. But you didn't abandon the claim. Your honor, there's nothing to support the idea that the trustee abandoned the claims against Liza with Teller. And here's the, it absolutely 100% went forward with the claims. Because the trustee asserted claims against Liza with Teller and the two lawyers, forget about the titles of the causes of action is pursuing the exact same form of relief as is being pursued in this action. So that's why. There's no adjudication. Well, this standing requirement can't possibly mean that a creditor can pursue the relief of the trustee against the same parties. I can't. So Liza with Teller is facing double liability because of the claims that are being asserted. And the reason they can't is because that's why you have to have the abandonment, but there hasn't been an abandonment. There's no writing that they depend on to support the idea that the trustee expressly indicated an abandonment of a claim against Liza with Teller. Two minutes. The trustee is pursuing a claim against Liza with Teller. It is pursuing the exact form of relief. That is the diminution of the estate assets on the same theory as is asserted by a HR. The only distinct distinction is the title that is given to it. And then the description of the cause of action, but it is otherwise the same. It is based on the idea, the contention, I should say that Liza with Teller combined with North Mill and Ivan Jeffrey to in some way make a sale that was for less than all full value for its assets. Now there's no merit to this claims. We originally got the claims dismissed by judge, by the district court on the basis of on a 12 B six, because it failed to state a cause of action. And then there was an amendment complaint, which didn't materially change anything. And then we got headed up in this lengthy process with respect to going to bankruptcy court and then dealing with the standing issue. But in any event, it is not the situation that HR can simultaneously present these claims along with the trustee because they lost standing. If it has standing, it lost it. Once the bankruptcy was filed, the district court reviews very comprehensively. The law with respect to that issue. What is that? What is that lawsuit in the bankruptcy? That court is actually in the bankruptcy court stand of our TV. It's a claim that you say is presently before the trust before the bankruptcy court. And it's the exact same claim that our team makes it to the district court. What is in standing in the bankruptcy court? The trustee. Sure. The trustee pursued claims against my clients to recover for the exact same amounts that are at issue here. That is that there was a sale that was for less than full value of the assets at a time. Then the sale could have been for more to some other party. And the same theory, the trustee is the same theory. Yes. He didn't call it the same description, but the theory is that the lawyers some way participated with their client, which is not something I think that is actionable, but that's raised that issue. But that the assets of Wilton Armatel were sold for less than full value to a particular purchaser at a time when there was another opportunity to sell for full value or for a greater value, which then deprived the estate of the full value of the non real estate assets, which is exactly the same pursuit. I'm sorry. What is the bankruptcy court doing with that claim at this time? Where does that stand? Well, I don't. That claim has been prosecuted by the trustee. Discovery has come to an essentially to a conclusion, except for the trustee decided to try to abandon the claim. So that claim was never adjudicated in the bankruptcy court. Well, not yet, because it's in process. You say it's abandoned. No, it has not. Excuse me, Your Honor. It has not been abandoned. It has absolutely not been abandoned. It wasn't adjudicated either, you say. Let me explain. Presently before the bankruptcy court, though I don't believe this is at all material to the disposition of this appeal. Presently before the bankruptcy court is the trustee's motion to abandon the claim. We held a hearing. There was a hearing on that, which was with seller participated and asserted an objection to your request to abandon. The bankruptcy court has not made a decision on the trustee's motion with respect to the abandoned. But remember, that motion, just to be clear, is not to abandon its claim to AHR. It is to abandon the claim to the debtor. So at this point in time, AHR has no basis for standing, because it lost it once the bankruptcy was filed, and it hasn't since regained it. It didn't regain it by the stipulation, which has nothing to do with abandoning claims against my clients, and it didn't abandon anything whatsoever to AHR. Now the plaintiff, as I understand, has his third position, which is that it was abandoned as a matter of law. Well, that can't be right either. It can't be right because the trustee pursued the claim. You can't reconcile the two positions. You can't possibly reconcile them. Well, Mr. Cronin, I take the plaintiff's best argument to be that there are two particular claims that were specifically not abandoned, negligence of professional liability and breach of contract. So maybe the implication is all other claims against Liza Whitteller were abandoned because they're not spelled out there. What would your response be to that? My response is that's not what it says in the act. You can't make any assumption that the fact that there's just mention of these particular claims, that that means any other claim is abandoned. But importantly, let's keep this in mind. With that regard, again, for the title that you give the claim, the concept is the same. It is the nature of the relief that is being pursued. The relief was not abandoned. The theory behind this is that, well, the trustee is not chasing it. That's not true. The trustee is chasing it. The trustee is chasing it, trying to recover from Liza Whitteller. The same amounts that are at issue here, the same amounts that it represented to the bankruptcy court to employ special counsel to pursue was of the same value as is described in this case. And the same amount that was then described in the self-executing or the disclosures that were made as part of discovery in the case by the trustee. And the trustee pursued it. The trustee took depositions. The trustee engaged in written discovery. The trustee has produced documents. The trustee has demanded materials from us. The trustee has conducted depositions of my clients. So it is the form of relief. It is not the title. That's why I started with the idea that the first standing test is particularized harm, not particularized claim. It is particularized harm. And the harm that's involved is exactly the same as is being pursued by the trustee, which is now subjecting, if this case is allowed to go forward by AHR, will subject my client to duplicate liability, which can't possibly be the purpose, because at that point then there's no abandonment. Think about how that works. You're going to abandon the claim. Ah, I'm going to abandon the claim, but I'm going to pursue the same form of relief. How is that possibly, how can you reconcile that concept? You're abandoning, the concept behind abandonment is you're abandoning the opportunity to pursue that relief. That's what you're abandoning. You're not abandoning the title to a cause of action. You're abandoning the form of relief so that there isn't multiple parties  Here there's multiple parties chasing the same form of relief. But the bankruptcy court has not adjudicated the claim that was made according to what you told me. You said they were pursuing it, but there's never been an adjudication. It's not there yet, Your Honor. The trustee has asked for and obtained extensions of the schedule. I mean, the case has been on casement. It's had a Rule 16 order in place since a long time ago and is being pursued. The court recently amended some of the deadlines. It did not restore the discovery deadlines. The trustee is in this limbo position about the expert witness deadline. And the court further extended the deadline pending the decision with respect to the trustee's motion to abandon, which, again, lies with our opposition. But the trustee, the stipulation on settlement agreement expressly stated that the trustee would not interfere with the assertion by a partizan of the abandoned claims. Just quite frankly, quite honestly, that's just being legally cute, right? That's all that is. Sure, what does the trustee care if somebody else pursues the same thing and gets double payment from the single source, gets the same form of relief? How can the trustee control that? That's not up to the trustee to do. The trustee didn't say, and I abandon that form of relief. And if that's the situation, then how do they reconcile the two positions? Because the trustee is pursuing that. My client has had to defend duplicate causes of action by two different parties in the court for the same activity. That can't possibly be the purpose of this whole concept of standing and abandonment. It can't be. You can't subject my client for a duplicate recovery for the same conduct. Only one of them gets the money, if they're even... He hasn't abandoned the claim by Artesian or the other parties. He has not. Judge, you continue to say that the trustee has said he's abandoned the claim. That's not true. I said that too. That's only not true. That's why I'm trying... Or say he would not interfere with the assertion by Artesian. I don't know what that means. He's not that sure. If he can collect the judgment against Liza Whittle or Watson and then the trustee can go collect it again, I'm sure he won't. What does he care? But that's not... This is distorted thinking by Mr. Golden in his presentation to suggest that the form of relief was abandoned by the trustee. It was not. It was absolutely not. Whatever the noninterference means, okay, so they're each in it for themselves. That's all this means. They're each in it for themselves. What they're doing is they're both attacking my client simultaneously to pursue the exact same form of relief for exactly the same conduct during the same time period, meaning that it was all the same activity and all having to do with a sale for less than full value of the assets, of the non-real estate assets. So somehow Mr. Golden is convinced that the trustee abandoned the form of relief in some writing, and that's not true. And if it's true, then it means that the trustee is acting illegally. And if that was the case, he wouldn't have been bothering to go through discovery to pursue my client, to take the depositions, to travel to New York and to travel other places to do the third-party witnesses, which included the former employees of the bank at North Mill, along with the former employees of Wilfrid Armentola Debtor and my client. The trustee has asserted in a petition that considerable resources were spent. I think they told the bankruptcy judge they spent $40,000 in expenses. So it's not the situation that has been abandoned. It's being legally acute. They're saying, you know, the trustee isn't going to interfere. That's not abandonment. And then they say abandonment, but they point you to a stipulation that doesn't abandon anything whatsoever to AHR. It abandoned it to the debtor. AHR wants to say, well, it can't abandon it to the debtor because those claims never belong to the debtor. Well, that may be, that's an interesting construction, but it's not what the stipulation indicates. And there's no court adjudication on the idea that abandoning to the debtor is the same as abandoning to AHR. So going back to the original issue, they didn't. AHR lost whatever standing it had over some of the claims and it's form of relief as soon as bankruptcy was filed and it hasn't regained standing to pursue those claims. I hope I've been successful at answering the questions. Straightening it out has been a long way to get to this point for me to be able to clarify that. I know you've been successful in generating questions I have for Mr. Goldman. Am I on now? Okay. Mr. Goldman, you have no other questions and I don't hear anybody asking any. Go ahead, Mr. Goldman. Is there four minutes, I think? Can I just, Your Honor, can I just add one thing? And as the district court pointed out in its opinion, which is that the trustee cannot abandon relief in favor of any particular creditor, which is what's happened here. Not that it's actually happened, but that that's the position that AHR is taking, that the relief was abandoned to it, meaning it favored them as a creditor, which the district court said is not allowed. Okay, thank you. Thank you. Mr. Goldman, it was kind of malicious of my, for my benefit, help me with the whole confusion of abandonment, because I often use that term and I didn't think there was any dispute about that, with the fact the trustee was not pursuing the planning issue in my mind and then became what happened to it. The friend has raised the issue that whatever happens should not be termed an abandonment. So maybe you can clarify that for me. Sure. But can I answer that in part by referring you to a part of the record? Sure. 8463. 8463? That's correct. 463, yep, got it. Paragraph 16, and in particular, the last sentence. Okay. Okay. Okay, I got it right now. Go ahead, everybody. When Mr. McCarron just spoke, he said, well, you can't have these two sets of claims because they're for the same set of beliefs. And the trustee clearly says they're not. In fact, up on the top of the page, excuse me, there's a list of the claims that Artesinius is bringing. They aren't the claims that are being brought by the trustee. Now, he then raises the possibility of a double recovery. And we all know double recoveries aren't permitted. But we also don't know that the trustee will succeed or fail in his claims. And the argument Mr. McCarron is therefore making is, well, it doesn't matter whether the trustee succeeds or not in his claim. If the trustee's bringing a claim, Artesinius can't, even though there are different causes of action. And that's just not true. If, for instance, the trustee loses or the trustee decides not to pursue his claim or the trustee's motioned to abandon the claim, which is currently before the bankruptcy court, doesn't go anywhere, Artesinius would still be able to pursue his claims. Now, as to the issue of abandonment, there are three different possibilities here. The first is that the trustee never got the claims to begin with, which is what the trustee has taken as his position against Liza Witzel. If they belong to Artesinius, they don't belong to the trustee. But the second is as we've been through previously, there was a compromise, a rule 19, excuse me, compromise agreement, which was heard by the court on motion by the trustee. The trustee, exercising his discretion, decides that he doesn't want to pursue the claims that Artesinius is already bringing in district court. And that compromise agreement is approved by the bankruptcy court. That's a done deal. And I think one of you made a comment before the equivalent of, it is a done deal, and yes it is. But we have no reason now why we should be reopening that final order of the bankruptcy court. And then there's the third time when the trustee again tries to abandon the claims other than the malpractice and breach of contract claim. And if you go back to the stipulation of his original motion, he's abandoning all claims except, except the malpractice and breach of contract claims. So the trustee has three times tried not to bring these claims and wants Artesinius to bring them. And part of the reason the trustee does is because if Artesinius succeeds, that will reduce Artesinius' claims against the bankruptcy estate. So the trustee has a real interest in seeing that happen. But the estate, you control Wilton now. And so I wonder whether we think the trustee has an independent judgment here on A463 that there are in fact separate claims or whether the trustee is more maybe partial to your side. I don't think so. No. Because Wilton, the trustee has been completely arm's length at Wilton. Wilton is, there's nothing there. It was denuded. Other than whatever claims were abandoned to it, there's nothing there. I don't know whether that answers your question or not. I hope so. If not, I wanted to speak a little bit then about the notion of a direct injury. Go ahead. That again gets to the notion that only Artesinius had a judgment lien recorded. Yes, it was unique. And it was the basis of that uniqueness that compelled the Chapter 7 trustee to enter into the compromise agreement in which he permitted Artesinius to pursue his claims. So at the end of the day, we come back to the points I tried to make at the very beginning, which is the trustees had a discretion just as any business manager does in how he will deal with the assets of the estate. In this case, it was the most important asset was the real estate at that point in time. And the compromises he will make to be able to sell the real estate. And in this case, it was a compromise where Artesinius took less than it wanted, but in exchange, it was permitted to go ahead with its claims against North Mellon, Lee's Hotel, and others. And that was the deal. That was the deal everyone got notice of. That was the deal that went before the bankruptcy court. That was the deal in which the North Mellon appeared. Lee's Hotel could have appeared. It didn't. But North Mellon, and that's the deal when North Mellon's counsel got up and said, in response to the judge failing, where I said, the releases in the North Mellon carve-out agreement don't impact anything. There's nothing in this. ARH isn't releasing anything. There's nothing in that settlement that forecloses ARH's claims against North Mellon. The court says, I don't know of any that would. Let me ask Mr. Israel. Do you think there's anything? Mr. Israel says, there's nothing. They could go forward with, you know, we don't see a long tail to that, but they could go forward with what they've got in federal court by all means. And the court then says, you have the parties that particularly agree, the trustee and North Mell, saying they agree with your position that your litigation is not compromised by what is happening here today. By anything that happened today. And I don't know, you know, when we stand in front of a court and we're having that colloquy, I don't know how we make it clear. I don't know how many judges could be clear. I think we understand your point, Mr. Coleman. Thank you for your patience and the firmness with which you've presented your perspective and I'm glad that you decided to answer our questions. Unless my colleagues have any questions between that and the advisement, I would like to get a transcript and Mr. King, if you speak with him, can explain how to get a transcript and you should submit the transcript. Super. Okay. Thank you very much. Thank you. Can I point out to the court that this stipulation doesn't use the word accept? The stipulation, Mr. Coleman... Look at the stipulation right now. You can do that in a 28-J letter. This is John Dice pretty soon. Thank you very much. Thank you. Thank you. Thank you, Your Honor. Is Mr. King still on the line? I think... I don't know if he's on the line. Okay. I will call back Mr. King later. Yeah, you can call him. Give him a call and he can explain that to... Thank you so much. Thank you. Bye-bye.